# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

FLOYD FULTON,                          :

    Plaintiff,                    :
                               Case No. 3:13cv00285

 vs.                                   :

                                   District Judge Thomas M. Rose

CAROLYN W. COLVIN,                      :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,                :

    Defendant.                    :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    __Introduction__

    Plaintiff Floyd Fulton filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 23 and 30, 2009, respectively. (*PageID##* 236-41). He alleges disability due to a combination of physical and mental impairments, including seizures. (*PageID#* 278). He claims to be disabled as of the date he last worked as a grill cook: September 28, 2009. (*PageID#* 74).

    After various administrative proceedings, Administrative Law Judge ("ALJ") John S. Pope denied Plaintiff's applications based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Act. (*PageID##* 51-63). The ALJ found that despite Plaintiff's impairments he still had the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels but with certain nonexertional limitations. (*PageID#* 55). He concluded Plaintiff could not only perform his past relevant work as a janitor, but could also perform a significant number of jobs in the national economy. (*PageID##* 61-63). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. (*PageID##* 33-35). Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff is now due.

This case is presently before the Court upon Plaintiff's Statement of Errors (Doc. # 7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Doc. #6), and the record as a whole.

## II.    Background

### A.    Plaintiff's Testimony

Plaintiff was 48 years old at the time of the alleged disability onset date, which is defined as a "younger individual age 18-49." *PageID#* 62; 20 C.F.R. §§ 404.1563, 416.963. He graduated from high school but took special education classes. (*PageID#* 76).

Plaintiff testified he is 6' tall and weighs approximately 290 pounds. (*Id.*). He lives with his wife in a one-story house. (*Id.*). He does not have a driver's license,

---

[2]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

2

because he "had a bad wreck in '09 and . . . hit [his] head real bad and it seems like it affected [him] more since then." (*Id.*). Plaintiff last worked in September 2009, as a grill cook in a sports pub. (*PageID#* 77). He testified he stopped working "[b]ecause of seizures. The heat was really bad and that really brought them on. It didn't matter what kind of weather you had, it was, I would sweat really bad and drip. Have to wipe off a lot." (*Id.*). Plaintiff stated the owner terminated his employment, and he received unemployment as a result. (*Id.*).

Plaintiff testified that in the past 15 years he worked three types of jobs: cook, janitor, and production welder. (*PageID#* 78). He described the production welder position, which he did for 18 months, as "put[ting] parts in the machine and it, the machine welded the part." (*Id.*). Plaintiff stated he has not looked for any other kind of work since his last job, "because I'm, I'm afraid I'm going to have more seizures. Because my wife sees me have seizures and I can't even tell I'm having them." (*PageID#* 79). Plaintiff testified he also has problems with walking, as well as lifting and carrying items. (*PageID#* 80).

Plaintiff sees Dr. Goldstick, a neurologist, for his seizure disorder. (*PageID#* 82). He testified he thinks he has been going to Dr. Goldstick since 2009, "[m]aybe '08." (*Id.*). He sees him "when he can get me in because he has so many patients," and estimates it is "sometimes just once a year and sometimes not that often." (*Id.*). He believes the last time he saw Dr. Goldstick was in January 2012. (*Id.*). Plaintiff stated he

takes three medications and "I don't seem to get any side effects from them right now." (*PageID#* 84).

When asked about what he did yesterday, Plaintiff testified he woke up around 11:00 a.m. or 12:00 p.m., watched television for a few hours, then went to his brother's house with his wife. (*PageID#* 86). They sat and ate lunch with him, went with him to pick up his daughter from her school, then left around 4:00-4:30 p.m. (*Id.*). When he got home he took his dogs out then watched television before going to bed around 10:00 p.m. (*PageID#* 87).

Plaintiff testified he has some trouble putting on his shoes, socks, and coat. (*PageID#* 87-88). He is able to shave with an electric razor and can shower. (*PageID#* 88). He does not use the oven, but can make sandwiches and heat up food in the microwave. (*Id.*). Plaintiff does not go grocery shopping, sweep, or vacuum, but loads and unloads the dishwasher and sometimes does laundry. (*PageID#* 89). Plaintiff estimates he can probably lift between 15 and 20 pounds, and can stand for about 5 minutes before needing to sit down. (*PageID#* 92).

When cross-examined by his counsel, Plaintiff testified that as a cook he made burgers, roast beef, and ham, but was not putting recipes together. (*PageID#* 96). He testified he starting having seizures when he was a kid, but does not know the last time he had a seizure because the only way he knows is when his wife tells him he is having one. (*PageID#* 97). For example, he testified he was grilling some brats and hotdogs when the heat from the grill made him start feeling dizzy and he had to get away from the grill.

4

(*Id.*).  He stated, "[t]hat's the only way I can really tell that I'm having one." (*Id.*).  Plaintiff also testified that he has problems with his memory, and needs reminders to do work around the house.  (*PageID#* 98).  His wife keeps track of doctor's appointments, as well as pays the bills using a computer.  (*PageID#* 99).  He has not written checks, and only lived by himself for a short period of time (approximately 6 months).  (*Id.*).  He has a savings account but "didn't do checking."  (*Id.*).

### B.    Sherry Fulton's Testimony

Plaintiff's wife, Sherry Fulton, also testified at the administrative hearing.  (*PageID##* 100-04).  She testified they have been married since September 2004.  (*PageID#* 100).  Mrs. Fulton stated she has not been working for the last two years.  (*Id.*).  She stated, "Floyd was having seizures and I actually lost my last job because he was having seizures and my mom and dad are usually my backup and they were on vacation, so, like when he has seizures I can't leave him home alone.  So I was off work for quite a while and I ended up losing my job then."  (*Id.*).  She stated Floyd has seizures 2 to 3 times per month, and they can last up to 35 seconds.  (*Id.*).  She can tell when he is having a seizure because he becomes nonresponsive.  (*PageID#* 101).  He has seizures at varying times during the day and night.  (*Id.*).

Mrs. Fulton also testified that her husband has problems remembering how to do certain things.  (*PageID#* 102).  She stated, "I can give an example.  The stove, when I was working I asked him if he, I called and asked if he could turn on the stove.  When I got home he was standing at the stove and he had broke out into a sweat and I asked him

5

what was wrong and he just looked at me and he said I don't remember how to turn on the stove.  And I said, that's okay, just go ahead and sit down I'll do it.  And then after that he did have a seizure."  (*PageID#* 103).  She stated he tries to help with things around the house, but she "pretty much do[es] everything."  (*Id.*).

### C.  <u>Medical Evidence</u>

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence.  The Commissioner likewise defers to the ALJ's factual recitation.

## III.  <u>Administrative Review</u>

### A.  <u>"Disability" Defined</u>

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§ 423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the

6

regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B.    Social Security Regulations

Administrative regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See PageID## 44-45; see also* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. 404, Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C.    **ALJ Pope's Decision**

At Step 1 of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 28, 2009, the alleged onset date. (*PageID#* 53).

At Step 2 of the sequential evaluation, the ALJ concluded that Plaintiff has the following severe impairments: seizure disorder, depressive disorder, and mild mental retardation. (*Id.*).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings, including sections 12.04 and 12.05. (*PageID##* 53-55).

At Step 4, the ALJ evaluated Plaintiff's RFC and found the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: never climb ladders, ropes, or scaffolding, work with hazardous machinery, or drive; avoid moderate exposure to extreme heat or cold; and can understand, remember, and carry out routine, unskilled tasks with a reminder of the task twice a day.

(*PageID#* 55). The ALJ further determined that Plaintiff's statements concerning his impairments and their impact on his ability to work are inconsistent with the record as a whole and not entirely credible. (*PageID##* 57-59). The ALJ found Plaintiff could perform his past relevant work as a janitor, as "[t]his work does not require the performance of work related activities precluded by the claimant's residual functional capacity." (*PageID#* 61). The ALJ also made an alternate Step 5 finding that based on

the testimony of the VE – and considering Plaintiffs's age, education, work experience, and RFC – he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as the occupations of cafeteria attendant, cleaner, and fast food worker.  (*PageID#* 62).

This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and therefore not eligible for DIB or SSI.  (*PageID#* 63).

## IV. <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . ." *Rogers*, 486 F.3d at

9

241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.   Discussion

### A.   Plaintiff's Contentions

Plaintiff sets forth the following assignments of error: (1) The ALJ's findings that Plaintiff's mental retardation fails to meet or equal Listing 12.05(C) is unreasonable and without substantial evidentiary support; (2) the ALJ erred in denying any appreciable weight to the opinion of treating neurologist Dr. Goldstick; (3) the ALJ's findings regarding Plaintiff's daily activities are unsupported; (4) the ALJ's adverse credibility findings are without support; and (5) the ALJ's decision is not supported by substantial evidence and the Commissioner's position is not substantially justified. (*PageID# 615*).

### B.   Listing 12.05(C)

Plaintiff first contends the ALJ should have determined he was disabled at Step 3 because he met the criteria for mental retardation under Listing 12.05(C).  (Doc. #7, *PageID##* 615-18).  According to Plaintiff, "[t]he record as a whole overwhelmingly establishes that Plaintiff's mental retardation meets or equals Listing 12.05(C)."  (*Id.*).  The Commissioner acknowledges that Plaintiff "may have had some difficulties as a result of his mental impairments, [but] he did not show that he had the deficits required by Listing 12.05C."  (Doc. #11, *PageID#* 645).  Accordingly, the Commissioner contends "the ALJ reasonably concluded that he did not meet or medically equal listing 12.05C." (*Id.*).

The Regulations explain the criteria for mental retardation in § 12.05 of the Listings:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

The regulations provide that a claimant will meet the listing for mental retardation only "[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory

paragraph and one of the four sets of criteria . . . ." *Foster v. Halter*, 279 F.3d 348, 354

(6th Cir. 2001) (citations omitted).

In this case, the ALJ first notes that Plaintiff has sufficiently shown significantly

subaverage general intellectual functioning:

> Here, the claimant submitted records from the Northridge Schools (Exhibit 13E).
> On the summary page of the claimant's partial educational history, it is indicated
> that the claimant took the Binet test in 1967, the WISC test in 1972, and the WISC
> test again in 1975 (*Id.* at 5). The claimant's intelligence scores from these tests
> was 55, 64, and 67, respectively (*Id.*). The claimant was also identified throughout
> the records as "EMR" (educable mentally retarded) which is the designation for
> someone with a lower intelligence score that would benefit from education and
> instruction.

(*PageID#* 54). However, as the ALJ notes next, Listing 12.05 also requires a showing of

deficits in adaptive functioning before age 22. (*Id.*). As to any of Plaintiff's deficits in

adaptive functioning, the ALJ finds as follows:

> [T]he claimant's school records indicate that the claimant consistently improved
> in his grades from 1st and 2nd grade where he received mostly Cs and Ds to As, Bs,
> and Cs in high school (Exhibit 13E/8-10). While the claimant's records
> demonstrate some educational difficulties, the claimant clearly began to benefit
> from his education and instruction. Second, the claimant's social achievements
> also demonstrate that the claimant does not have deficits in adaptive functioning.
> In this case, by 1982, the year the claimant would have turned 22 years old, the
> claimant had been working as a cook in a restaurant for several years (Exhibit
> 4E/1). According to Dictionary of Occupational Titles, a cook (DOT 313.361-
> 014) has a SVP of 7, a skilled position (Exhibit 15E/1). In his comments regarding
> his work as a cook, the claimant described his daily tasks to include cooking food
> to order, prepping food, stocking the kitchen, and supervising a kitchen staff of
> five to eight other people (Exhibit 4E/2-7). When considering the improvement of
> the claimant as he progressed through school and his success in the workplace
> prior to the age of 22, the undersigned finds the claimant does not have deficits in
> adaptive functioning, and therefore does not meet the initial requirements of listing
> 12.05.

(*PageID#* 54).  Plaintiff argues the ALJ's findings regarding the existence of adaptive

deficits are "entirely inadequate to reasonably sustain his premise."  (Doc. #7, *PageID#*

616).  Specifically, Plaintiff challenges the ALJ's findings regarding his improved grades

in school – from Cs and Ds in first grade to As through Cs in high school – and his work

as a cook prior to age 22.  (*Id.*).

A review of the record indicates the ALJ's finding that Plaintiff did not have

severe deficits in adaptive functioning – as required to meet the criteria for Listing

12.05(C) – was supported by substantial evidence and should be affirmed.  First, Plaintiff

challenges the ALJs reliance on his grades from school.  Essentially, Plaintiff contends

the ALJ should not have considered his grades in high school because they were earned

as part of a special education program.  (Doc. #7, *PageID#* 616).  Although, as the ALJ

correctly noted, the transcripts do designate Plaintiff as "EMR" (educable mentally

retarded), the Court does not find the ALJ's reliance on Plaintiff's improvements in

grades during high school to be unsupported by the record or improperly considered.

This is particularly true in a case such as this where it is not clear from the records

submitted or testimony elicited what impact being designated "EMR" had on Plaintiff's

curriculum, aside from general testimony that he took special education classes. (*PageID#*

76).  In other words, it is unclear what portion of Plaintiff's classes were special

education, and, to what extent such special education courses differed from regular

education courses (i.e., different curriculum, or accommodations, such as extra time for

tests, etc.).  Plaintiff bears the burden of presenting such evidence.  *See Foster,* 279 F.3d

at 355 ("A claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting "medical findings equal in severity to **all** the criteria for the one most similar listed impairment.")(quoting *Sullivan v. Zebley*, 493 U.S. 521, 531, 107 L. Ed. 2d 967, 110 S. Ct. 885 (1990) (emphasis in original)). Even so, "neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two." *Peterson v. Comm'r of Soc. Sec.*, 552 Fed. Appx. 533, 540 (6th Cir. 2014) (citations omitted).

Equally without merit is Plaintiff's challenge to the ALJ's findings regarding his work history. Plaintiff has a lengthy work history, including performing skilled[3] and unskilled jobs such as a cook, janitor, and production welder. (*PageID#* 106); *see Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007) (finding semiskilled work for a number of years to be inconsistent with mental retardation); *West v. Comm'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007) (finding claimant's long-term, full-time employment performing various maintenance and construction work for a city, as well as part-time work driving a garbage truck, supportive of ALJ's finding that claimant did not experience deficiencies in adaptive functioning). As part of his duties as a grill cook, Plaintiff even testified he was responsible for supervising people, "to make sure

---

[3] Plaintiff appears to argue he did not perform his work as a cook at the skilled level however, aside from merely quoting the *Dictionary of Occupational Titles*, he cites to no testimony from the VE that his work as a cook, as he performed it, was not at the skilled level. (*See* Doc. #12, *PageID#* 655).

they had their orders out and get them right because a lot of times they wouldn't." [4]

While Plaintiff appears to attempt to minimize such work activity throughout his briefing, the record of Plaintiff's rather successful and lengthy work history spanning three decades simply cannot be ignored.  Likewise, Plaintiff testified he received unemployment benefits after he was terminated from his most recent job in 2009.  As the Sixth Circuit aptly noted in *Justice v. Comm'r of Soc. Sec.*, 515 Fed. Appx. 583, 587 (6th Cir. 2013), such benefits "are conditioned on the unemployed beneficiary's being able and willing to work."

For these reasons, the Court finds substantial evidence supports the ALJ's finding that Plaintiff did not sufficiently show he had adaptive functioning deficits as required by Listing 12.05(C) and therefore failed to meet or medically equal this section.

### C.    Dr. Goldstick's Opinions

Plaintiff next argues that the ALJ erred by rejecting multiple opinions from his treating neurologist, Lawrence Goldstick, M.D.  (Doc. #7, *PageID##* 618-621).  The Commissioner contends that while the ALJ failed to consider Dr. Goldstick's August 2009 and February 2011 opinions, he did not commit reversible error because such error was harmless as the opinions were so patently deficient that no ALJ would have accepted them.  (Doc. #11, *PageID#* 646)

Social security regulations recognize several different categories of medical

---

[4] Plaintiff testified he also made burgers, ham, and roast beef.  Similarly, he knows how to use the grill on his back deck for making brats and hot dogs, although the heat allegedly can cause him to have seizures.  (*PageID##* 96-97).

sources: treating physicians, nontreating yet examining physicians, and nontreating yet record-reviewing physicians. *Gayheart v. Comm'r Social Sec*., 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").  In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (d) (eff. April 1, 2012)).

A treating source's opinion may be given controlling weight under the treating physician rule only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Gayheart*, 710 F.3d at 376; *see* 20 C.F.R. §404.1527(d)(2) (eff. April 1, 2011).  "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence."  *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6) (eff. April 1, 2012)).

Unlike treating physicians, "opinions from nontreating and nonexamining sources

are never assessed for 'controlling weight.' The Commissioner instead weighs these

opinions based on the examining relationship (or lack thereof), specialization,

consistency, and supportability, but only if a treating-source opinion is not deemed

controlling. Other facts 'which tend to support or contradict the opinion' may be

considered in assessing any type of medical opinion." *Id.* (citing 20 C.F.R.

§404.1527(c)(6) (eff. April 1, 2012)).

In addition to his treatment notes, Dr. Goldstick, a neurologist, issued three

functional capacities evaluations regarding Plaintiff's work capacity. These evaluations

were prepared on January 24 and February 11, 2011, as well as August 28, 2009.

(*PageID#* 578-83). In his decision, the ALJ refers to Dr. Goldstick's first assessment as

follows:

> The undersigned considered evidence from Dr. Lawrence Goldstick. In his
> treatment notes, Dr. Goldstick stated that the claimant could not work from
> heights, with machinery, or drive (Exhibit 9F/4). This is consistent with the
> residual functional capacity state above. The undersigned does give significant
> weight to the limitations imposed by Dr. Goldstick in his treatment notes (Exhibit
> 9F/4).
>
> Dr. Goldstick also submitted a check sheet indicating that the claimant's seizures
> occur monthly even though the claimant is compliant with treatment, would have
> the limitations stated in his notes, and would be absent more than three times per
> month (Exhibit 19F). Dr. Goldstick's opinion is not well-supported by medically
> acceptable and clinical laboratory diagnostic techniques and is inconsistent with
> his own clinical findings and treatment notes. His treatment notes indicate very
> few seizures since the alleged onset date, and that the claimant's seizures are
> controlled when he takes his medication properly. As such, it cannot be accorded
> controlling weight. In evaluating the other factors under 20 CFR 404.1527 and
> 416.927, the undersigned finds little support to give Dr. Goldstick's check sheet
> opinion significant weight. The check sheet is a minimal medical questionnaire
> without significant explanation regarding the limitations. The undersigned has

17

> also considered the possible bias that a treating physician may bring to the disability evaluation. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with him he sympathizes. While it is difficult to confirm the presence of such motives, it is more likely in a situation where the opinion in question departs substantially from the rest of the treatment notes, as in the current case. Considering these defects, the undersigned declines to assign more than little weight to his check sheet opinion regarding the claimant's functional limitations.

(*PageID#* 60). While the ALJ discusses Dr. Goldstick's questionnaire dated January 24, 2011, he fails entirely to discuss Dr. Goldstick's two other evaluations from February 11, 2011, and August 28, 2009. Dr. Goldstick opined in his February 2011 evaluation that Plaintiff's impairments are expected to last longer than 12 months or more; he is unable to operate heavy machinery or work in elevated places; should not work around chemicals; and has a decreased range of motion. (*PageID#* 580-81). Dr. Goldstick opined in his August 2009 evaluation that Plaintiff is unemployable; his impairments are expected to last 12 months or more; he has decreased concentration and problems focusing that require him to rest; he cannot stand for a long period of time; can potentially have a seizure and is unstable to perform any job duties at this point. (*PageID##* 582-83). The Commissioner contends that while the ALJ failed to reference these two opinions, such an error was harmless as they were "so patently deficient that no ALJ could have accepted them." (Doc. #11, *PageID#* 646). A review of the record, however, indicates this argument lacks merit. While a failure to observe § 1527(d)(2) may not require reversal where a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, *Wilson*, 378 F.3d at 547, such is not the case here. Even assuming there

18

are inconsistencies between Dr. Goldstick's opinions and portions of the record as alleged by the Commissioner, the opinions are not so patently deficient that they could not have possibly been credited. Again, the *Wilson* Court set a high threshold for the Commissioner to meet for this type of argument when it discussed application of the harmless error doctrine, noting it applies if "the Commissioner could not possibly credit [the opinion] . . ." *Wilson*, 378 F.3d at 547. Here, Dr. Goldstick is the only physician to examine or treat Plaintiff who has offered an assessment regarding Plaintiff's physical capabilities. His opinions also were prepared at varying intervals since Plaintiff's alleged onset date of disability in September 2009. Moreover, Dr. Goldstick is a neurologist who specializes in the field relevant to Plaintiff's allegedly disabling seizure disorder. (Doc. #7, *PageID#* 621). Furthermore, it seems particularly questionable how Dr. Goldstick's opinions could be found so patently deficient that no ALJ could credit them, when, in fact, the ALJ in this case already provided "significant weight to the limitations imposed by Dr. Goldstick in his treatment notes," including that Plaintiff could not work from heights, with machinery, or drive. (*PageID#* 60). For all of these reasons, Plaintiff's Statement of Errors is well taken.[5]

## VI.    <u>Remand is Warranted</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case

---

[5]  Because of this conclusion and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining challenges to the ALJ's decision is unwarranted.

for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42

U.S.C. § 405(g), the Court has authority to affirm, modify or reverse the Commissioner's

decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*,

501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of

Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the

evidence of disability is not overwhelming, and because the evidence of a disability is not

strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social

Security Administration pursuant to Sentence Four of § 405(g), due to the problems

identified above. On remand, the ALJ should be directed to: (1) re-evaluate the medical

source opinions of record under the legal criteria set forth in the Commissioner's

Regulations, Rulings, and as required by case law; and (2) determine anew whether

Plaintiff was under a disability and thus eligible for DIB during the period in question.

Accordingly, the case should be remanded to the Commissioner and the ALJ for

further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Floyd L. Fulton

was under a "disability" within the meaning of the Social
Security Act;

3.      This case be remanded to the Commissioner and the
Administrative Law Judge under Sentence Four of 42 U.S.C.
§ 405(g) for further consideration consistent with this Report;
and

4.      The case be terminated on the docket of this Court.

February 9, 2015

                                                              s/Sharon L. Ovington
                                                              Sharon L. Ovington
                                 Chief United States Magistrate Judge

21

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474  U.S. 140 (1985);  *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).